IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SAMANTHA CONNER                                                                          PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:20-CV-057-MPM-RP

ALLTIN, LLC, et al.                                                                    DEFENDANTS

**ORDER**

This cause comes before the court on its own motion, continuing the trial in the above-entitled matter so that it may issue a ruling on the constitutional issues in this case at a time when the Mississippi Legislature is in regular session and thus able to respond quickly to any ruling from this court. In its amicus brief submitted in support of defendants' motions for summary judgment, the Mississippi Apartment Association ("MAA") writes that "[a]ny ruling that discards the existing, well known eviction rules applied by justice court judges across the state will have a dramatic impact on the rental industry." [Amicus brief at 2]. This court does not doubt that declaring the Mississippi eviction statutes in question[1] to be unconstitutional would have a "dramatic impact" on the rental industry in this state, but this impact will not deter it from taking this step, if it becomes convinced that the law requires it.

At the same time, this court does believe that the MAA's concerns regarding the impact of discarding the statutes in question should figure into the question of the *timing* of any such ruling. In particular, this court concludes that it would be wise to wait until the Mississippi Legislature is in regular session before issuing any ruling on the motions for summary judgment, so that the Legislature may react quickly to any order declaring the statutes unconstitutional.

---

[1] *See* Miss. Code Ann. §§ §89-7-31, §89-7-35, §89-7-41.

1

This will also give members of the relevant legislative committees an opportunity to take their time in drafting potential replacements to the statutes in question, rather than attempting to hastily cobble together legislation which has not been given sufficient thought and consideration. Such a delay will require a continuance of the trial presently scheduled for this fall, but this court concludes that such is necessary under the circumstances.

This court hastens to add that it has not reached a firm decision on whether to declare the statutes in question unconstitutional, particularly since there appears to be no authority declaring eviction statutes similar to Mississippi's either constitutional or unconstitutional. Blame for this fact can scarcely be assigned to plaintiff, however, since, as discussed below, the Mississippi Attorney General's ("AG") office appears to concede in its brief that no other state has enacted an eviction scheme similar to Mississippi's. It is thus entirely predictable that there would be a dearth of authority in this context. At the same time, this court does acknowledge that the burden of demonstrating that a particular statute violates a provision of the U.S. Constitution is considerably heavier than merely demonstrating that the legislation in question is unwise, or even indefensible, from a policy standpoint.

While this court is thus undecided on the constitutional issues in this case, the summary judgment briefing has only strengthened its view that the Mississippi eviction statutes under consideration are very poorly written pieces of legislation which do not serve the interests of any constituent group in this state, including landlords.[2] What the statutes lack in style, they do not

---

[2] In so stating, this court notes that the AG concedes in its brief that "[t]he statutes in question do not provide specific guidance to landlords regarding what they should do to 'dispose of' a tenant's property not removed before the warrant of removal is executed." [Brief at 15]. This is certainly true, and it opens the door for landlords to be sued for enforcing the statutes, based on arguments that by committing acts such as keeping an evicted tenant's personal belongings, rather than merely removing them and placing them

2

remedy with substance. This court will therefore take this opportunity, once again, to express its hope that the Legislature will choose to amend the statutes in questions on grounds of good governance principles and regardless of any constitutional infirmities in the statutes. This is not the first time that this court has expressed its hope that the Legislature would choose to amend the statutes on its own initiative. To date, it has proven to be an empty one.

In its October order directing additional discovery on these matters, this court expressed grave doubts regarding the wisdom of the Mississippi statutes in question, and it "encourage[d] the Mississippi Legislature to consider, even before this court's final ruling on the constitutional issues in this case, whether the previously-discussed Mississippi statutes are the best this state can offer in this context." [*Id.* at 5-6]. In so stating, this court quoted some of the more egregious allegations set forth in the complaint such as plaintiff's contention that:

> The next day, February 20, 2019, Constable Sanders executed the Warrant. He and Casteel went to Samantha's apartment together and demanded that she leave. Samantha tried to gather what belongings she could carry but Casteel and Constable Sanders refused to allow her to remove anything -- even her most personal possessions like birth certificates, diplomas, social security cards, bank statements, medical records, old family photos, keepsakes, identifying documents, clothing, shoes, or toys. Casteel and Constable Sanders refused to let her change out of her pajamas or to pack clothes to take with her. Casteel and Constable Sanders would not allow her to take her laptop or her son's school issued laptop. Casteel and Constable Sanders took every earthly possession that held a memory for Samantha and her son, almost all of which would have been exempt from execution as a matter of law. Her son was not allowed to pack up his school books, football uniform, or Play Station which he had purchased with his own hard-earned money from working after school. Casteel and Constable Sanders refused to allow Samantha to take prescription medications she needed for serious illnesses. She left with nothing. Even the comfort of her son's presence was taken from her since he had to live with a relative while Samantha tried for months to piece her life back together. She began by contacting legal services in an attempt to recover what was taken from her.

[*Id.* at 6, citing plaintiff's brief at 7].

---

on a curb (or other similar actions), the landlord exceeded his statutory authority and should be held personally liable for such.

Based upon these allegations, this court wrote that:

> [i]f the facts developed in discovery bear out the allegations quoted above, then it would raise very serious questions about the fairness, and quite possibly the constitutionality, of the previously-discussed Mississippi statutes. That being the case, this court believes that the Legislature would be well advised to consider amending the statutes in question to provide clearer and more reasonable procedures for evictions. This court can discern no reason why the Legislature would need to wait for the completion of this litigation to begin considering these issues, and it encourages it to do so.

[*Id.* at 6].

While thus expressing serious doubts about the wisdom and also the constitutionality of the statutes in question, this court laid down a challenge of sorts to defendants, noting that its concerns in this regard might be "assuaged" if "defendants are able to cite similar statutes in other states which have been held constitutional." [Slip op. at 3] Conversely, this court indicated that a *failure* to demonstrate such authority would tend to strengthen its concerns regarding the legality of the Mississippi statutes in question. Specifically, this court wrote that:

> If, on the other hand, defendants are able to offer no such authority, and plaintiff is able to cite statutes in other states which provide greater protection to the property rights of tenants during evictions, then this would tend to strengthen this court's initial doubts regarding the constitutionality of Mississippi's statutory scheme in this context. In any event, this court regards eviction statutes from other states as constituting important information in this case, and it requests that the parties provide that information in their revised briefing following discovery.

[Slip op. at 3].

While this court thus granted defendants an opportunity to address its constitutional concerns by citing similar statutes enacted in other states, it is plaintiff who has presented the most helpful evidence and arguments in this regard. Indeed, the Mississippi Center for Justice writes in its *amicus* brief that:

> MCJ has conducted a survey of United States' eviction laws and has failed to find any state eviction law which so clearly denies Due Process and Equal Protection as do Mississippi's laws. MCJ research further determined that no eviction laws similar to Mississippi's laws have survived a constitutional challenge, by virtue of the fact that no

4

eviction laws with constitutional issues similar to Mississippi's have been discovered to exist in the United States.

[Brief at 2]. For its part, the AG appears to tacitly concede this point, writing in its own brief that the fact "[t]hat other states may not have a statutory eviction procedure like Mississippi's does not render them unconstitutional." [AG's brief at 16].

For the record, this court does agree with the AG that the absence of similar statutes in other states is not dispositive on the constitutional issues in this case, but it continues to regard such an absence as supportive of plaintiff's position in this case. Among other things, the absence of a similar eviction scheme in other states strengthens this court's inclination to conclude that, by simply informing tenants that their property left on the premises is subject to being "disposed of" by the landlord, constitutionally adequate notice was not provided that all of their personal property, including family photos and diplomas, would essentially become the personal property of the landlord.

In the court's view, the average tenant would likely believe that such a draconian penalty for overstaying a lease is something which "doesn't happen in America," and, with one unfortunate exception, he or she would be correct. This court's own research into other states' statutory provisions for eviction provided it with a wealth of examples of statutes which balance the interests of landlords and tenants far better than the Mississippi statutes in question. To give merely one example, West Virginia statutes provide that, in eviction cases where the tenant fails to remove his personal property, the following rules apply:

> (h) When an order is issued pursuant to this section granting possession of the property to the landlord, and the tenant fails to remove all personal property by the date and time specified by the order issued pursuant to subsection (f) of this section, the landlord may: (1) Dispose of the tenant's personal property without incurring any liability or responsibility to the tenant or any other person if the tenant informs the landlord in writing that the personal property is abandoned or if the property is garbage;

5

> (2) Remove and store the personal property after the date and time by which the court ordered the tenant to vacate the property. The landlord may dispose of the stored personal property after thirty days without incurring any liability or responsibility to the tenant or any other person if: (i) The tenant has not paid the reasonable costs of storage and removal to the landlord and has not taken possession of the stored personal property; or (ii) the costs of storage equal the value of the personal property being stored; or
> (3) Leave the personal property on the property. The landlord may dispose of personal property left on the property after thirty days without incurring any liability or responsibility to the tenant or any other person if the tenant has not paid the landlord the reasonable costs of leaving the personal property on the landlord's property and has not taken possession of the personal property.

W. Va. Code Ann. § 55-3A-3. It is difficult for this court to even conceive of a good faith policy argument as to how Mississippi's scheme which, the AG concedes, allows landlords to seize and either keep or dispose of diplomas, family photos and other cherished personal possessions, does even remotely as good a job of balancing the interests of landlords and tenants as the one enacted in West Virginia, and, most likely, every other state in the Union.

This court further notes that Mississippi's eviction scheme flies in the face of the policy considerations underlying Mississippi's *own statutes* in similar contexts. For example, Miss. Code Ann. § 85-3-1 provides for "exempt[ion] from seizure under execution or attachment" the very sorts of "household goods" which were seized in this case. This being the case, this court believes that any legislators who support the current eviction scheme should explain to their constituents why a businessman who defaults on a contract to buy a liquor store would enjoy the protections of § 85-3-1, while a single mother who defaults on and overstays her lease should be deemed to have no rights whatsoever in her most cherished personal possessions. It appears that Mississippi's statutory eviction scheme is based upon the legal fiction that the property in question was "abandoned" by not being timely removed, even in cases where the property in question is of the sort that the typical person would be highly unlikely to actually abandon. The West Virginia statute, quoted above, makes no such presumption of abandonment, except in

6

cases where the tenant expressly indicates an intent to do so in writing. This strikes this court as being much more consistent with the practical realities in this context.

This court notes that, in this case, the defendants refused to return plaintiff's cherished personal possessions such as diplomas and family photos even after she made it abundantly clear that she had *not* abandoned them. At no point in its briefing does the AG suggest that the defendants in this case overstepped their statutory bounds in doing so.[3] It is thus apparent that the Mississippi scheme, by the AG's own admission, grants landlords the power to not only reclaim their premises by "disposing" of property left within it, but to essentially seize and keep as leverage personal property in a manner which flies in the face of the Legislature's own intent as expressed in § 85-3-1. To single out tenants among debtors in this regard strikes this court as being arguably arbitrary and capricious in a constitutional sense, particularly since a lease for one's apartment is generally the *last* debt upon which an individual would voluntarily default.

In light of the foregoing, this court regards Mississippi's statutory eviction scheme as being indefensible from a policy standpoint, regardless of whether it is eventually held to violate the U.S. Constitution. This court is not yet willing to accept that the members of the relevant committees in the Mississippi legislature are indifferent to their duty to enact statutes which not only pass minimal constitutional scrutiny, but which actually serve the needs of their constituents in an effective manner. This court therefore takes this opportunity, once again, to notify the

---

[3]To the contrary, this court reiterates that the AG writes in its brief that:
> The statutes in question do not provide specific guidance to landlords regarding what they should do to "dispose of" a tenant's property not removed before the warrant of removal is executed. Although the phrase "dispose of" may not be defined, by common definition it means "to get rid of," "to deal with conclusively," or "to transfer to the control of another."

[Brief at 15].

7

Mississippi Legislature of its concerns in this regard, even though its prior urgings in this context resulted in no legislative action of which it is aware.[4] This court believes that, if the members of the Mississippi Legislature continue their policy of inaction in this context, then they should be prepared to explain to their constituents why they believe that this state alone should be burdened with an eviction scheme which authorizes landlords to take actions which, it is submitted, the vast majority of Mississippians would regard as outrageous.

In light of the foregoing, it is ordered that the trial in this matter is continued until a date to be determined later.

This 9th day of August, 2021.

/s/ Michael P. Mills
U.S. DISTRICT COURT

---

[4] It is unclear to this court whether the Mississippi Legislature is even aware of this litigation, and it therefore requests that the parties provide notice of this court's order today to the members of the relevant legislative committees.